IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CULMER, : | |
|     Petitioner : | |
|     v. : | Case No. 3:22-cv-143-KAP |
| SCOTT KLINEFELTER, : | |
| SUPERINTENDENT S.C.I. HOUTZDALE, : | |
|     Respondent : | |

<u>Memorandum Order</u>

Petitioner Daniel Culmer filed a timely petition at ECF no. 7 for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254, challenging his conviction and aggregate 5-10 year sentence imposed on July 23, 2019 in the Court of Common Pleas of Cambria County. *See* <u>Commonwealth v. Culmer</u>, CP-11-CR-1010-2018, CP-11-CR-1011-2018, and CP-11-CR-1071-2018 (C.P. Cambria), *aff'd*, 483, 484, 485 WDA 2021 (consolidated), 270 A.3d 1117 (table, text at 2021 WL 5755410)(Pa. Super. December 3, 2021). The respondent's Response is at ECF no. 15, with the relevant state court records attached as exhibits.

After review of the state court records, the Petition is denied without a certificate of appealability for the reasons explained below.

In petitioner's direct appeal the Pennsylvania Superior Court summarized the factual and procedural history of the case:

On April 25, 2018, Appellant was involved in a domestic dispute with Brayanna Lightfoot (Victim) at the Victim's home. Appellant left the residence, but returned a few hours later, firing a handgun into the residence while the Victim and six-year-old child were inside. Appellant fled the scene and was not arrested until a few months later. As a result, the Commonwealth charged Appellant at three separate dockets: 1010-2018, 1011-2018, and 1071-2018. The trial court summarized:

The cases filed at 1010-2018 and 1011-2018 were consolidated on November 7, 2018. Those cases were further consolidated for the purposes of trial with the case filed at 1071-2018 on April 3, 2019. A jury trial was subsequently held on May 20, 2019 and May 21, 2019. The jury found Appellant guilty of Count 2: Discharge of a Firearm into an Occupied Structure, Count 3: Recklessly Endangering Another Person ([Victim]), Count 4: Recklessly Endangering Another Person (L.C., a female juvenile) on the case filed at 1011-2018, and Count 1: Flight to Avoid Apprehension, Trial or Punishment on the case filed at 1071-2018. The jury found the Appellant not guilty of Count 1: Simple Assault on the case filed at 1010-2018.

The Appellant was also found guilty, through the non-jury phase of the trial, of the

following: on the case filed at 1010-2018, Count 3, Driving while Operating Privilege is Suspended or Revoked, and on the case filed at 1011-2018, Count 1, Person not to Possess, Use, Manufacture, Control, Sell [or] Transfer Firearms.

Trial Court Opinion, 1/21/20, at 1-2.

Commonwealth v. Culmer, 270 A.3d 1117 (Pa. Super. 2021) (unpublished memorandum), ECF no. 15-18 at 2-3 (brackets in original).

Petitioner raised four claims in his counseled direct appeal, and then filed the habeas petition raising the same four claims in essentially the same language. *Compare* Petition at Paragraph 12, ECF no. 7 at 6, *with* Appellant's Brief at 10-22, ECF no. 15-16 at 14-25. The Pennsylvania Superior Court rejected the first claim on the merits as follows:

> Appellant first argues that pursuant to *Batson v. Kentucky*, 476 U.S. 79, (1986), the trial court "erred in not finding that the Commonwealth exercised its peremptory challenges in a racially discriminatory manner during [jury] selection, when the lone African-American juror was struck from the jury pool." Appellant's Brief at 10. Appellant asserts the Commonwealth "failed to provide a sufficient answer or explanation as to the reason the lone African-American juror was struck from the [j]ury [p]anel." *Id*. at 11.
>
> We have explained:
>
>> A *Batson* claim presents mixed questions of law and fact. Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous. The ultimate burden of persuasion regarding racial motivation rests with the opponent of the strike.
>
> *Commonwealth v. Murray*, 248 A.3d 557, 567 (Pa. Super. 2021) (some citations omitted). In *Batson*,
>
>> ... the United States Supreme Court held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution. ... When a defendant makes a *Batson* challenge during jury selection:
>
>> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

2

*Commonwealth v. Thompson*, 106 A.3d 742, 751 (Pa. Super. 2014).

The trial court should consider the totality of the circumstances when determining whether the prosecutor acted with discriminatory intent. This Court must give great deference to the trial court's determination that peremptory challenges were free of discriminatory intent, and we will not overturn the determination unless it was clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation of a peremptory challenge should be believed; the best evidence often will be the demeanor of the prosecutor who exercises the challenge. ...

Within the *prima facie* case wherein a defendant must establish on the record the circumstances demonstrating purposeful discrimination, Pennsylvania law also requires that a defendant must make a record specifically identifying (1) the race or gender of all venirepersons in the jury pools, (2) the race or gender of all venirepersons remaining after challenges for cause, (3) the race or gender of those removed by the prosecutor, and (4) the race or gender of the jurors who served and the race or gender or jurors acceptable to the Commonwealth who were stricken by the defense. ...

In the second-step *Batson* analysis, we determine whether the Commonwealth gave a race-neutral explanation for its challenge. This inquiry does not demand an explanation that is persuasive, or even plausible. Instead, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Murray*, 248 A.3d at 567-68 (some citations omitted).

Here, during jury selection, the Commonwealth moved to strike Juror No. 139. N.T., 4/4/19, at 79. Defense counsel objected, arguing that nothing "of record would allow us to understand on what basis the Commonwealth had moved to strike this juror absent the color of her skin." *Id.* at 80. The Commonwealth responded, "It did not have anything to do with her race." *Id.* The Commonwealth stated it struck Juror No. 139 because the juror "had not answered a question posed to the group truthfully." *Id.* at 81.

The trial court explained:

The Appellant in these cases is an African American man. During jury selection, the Commonwealth struck an African American juror from the jury panel. The following series of exchanges occurred at jury selection between

3

the [court, the Commonwealth, and defense counsel:]

[DEFENSE COUNSEL]: May we approach?

[THE COURT]: [Defense counsel], what is your objection?

[DEFENSE COUNSEL]: Your Honor, the only juror of color in the panel has been stricken. This was a juror that hasn't responded in any traditional way that we would -

[THE COURT]: What juror is that?

[DEFENSE COUNSEL]: Juror 139. And there isn't anything of record that would allow us to understand on what basis the Commonwealth had moved to strike the juror absent the color of her skin.

[COMMONWEALTH]: Your Honor, I am familiar with the case of *Batson v. Kentucky*. I am trying not to take any personal offense from the challenge.

[DEFENSE COUNSEL]: None is meant.

[COMMONWEALTH]: I understand it is [defense counsel's] job. The question she answered about people not committing any crimes or a person close to her being charged with a crime, she did not answer that question when it was posed to the entire voir dire. She indicates an affirmative to that in her questionnaire.

[THE COURT]: Where at?

[COMMONWEALTH]: Question number three, have you or anyone close to you ever been charged with or arrested for a crime other than a traffic citation? She answered yes in her questionnaire but when you posed that to the group, she did not answer.

[THE COURT]: Was that the basis for your strike?

[COMMONWEALTH]: That is the basis for me striking her. It did not have anything to do with her race.

[THE COURT]: Let me look and see how she answered the other questions here. Any other questions similarly where she answered one way but didn't answer here?

[COMMONWEALTH]: No, Your Honor. In terms of the reason that I chose to strike her, she was on the panel and she had not — she was

4

> within the first twelve and she had not answered a question posed to the group truthfully.
>
> [THE COURT]: [Defense counsel], what is your response to that?
>
> [DEFENSE COUNSEL]: It occurs to me that while if you give me a few minutes, I can go through the list, we had other jurors similarly situated who did not respond affirmatively to the spoken questions.
>
> [THE COURT]: Can you give me some examples of that?
>
> [DEFENSE COUNSEL]: I can give you the one, that's the gentleman No. 66. I actually asked to call him down here because of the fact that he had not responded verbally to a question that he had answered.
>
> [THE COURT]: He has explained that.
>
> [DEFENSE COUNSEL]: That's true, but you asked me to give you an example. That's one.
>
> [THE COURT]: I am going to deny your motion.
>
> Transcript of Jury Selection, 4/4/19, [at] 79-81[.]
>
> ***
>
> Similar to the case in **Batson**, the Appellant here made a timely objection to the Commonwealth's strike of a juror of color. However, in the case at hand, in contrast to **Batson**, the trial court heard the objection made by [defense counsel], required the [Commonwealth] to give an explanation for his action, and allowed [defense counsel] to give an example of a similar situation of a juror answering questions inconsistently.[fn 3] Ultimately, the [c]ourt relied on its experience in supervising *voir dire* and found that the Commonwealth did not commit purposeful discrimination, as the Commonwealth came forward with a neutral explanation for the action it took.

Trial Court Opinion, 1/21/20, at 2-7 (footnote added).

Our review of the jury selection transcript and pertinent law comports with the trial court's conclusion that the Commonwealth provided a facially valid, race-neutral explanation, and in viewing the totality of the circumstances, Appellant failed to prove the Commonwealth committed "purposeful discrimination." Trial Court Opinion, 1/21/20, at 7; *see also Murray*, 248 A.3d at 567-68. Appellant's first issue does not merit relief.

. . .

2021 WL 5755410 at 2-4.  In footnote three, the Pennsylvania Superior Court observed that the comparator juror was also called to sidebar and questioned about his inconsistent answers, and that defense counsel ultimately struck that juror. *Id.*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, if a state court rejects a claimed federal violation on the merits, to obtain habeas relief a petitioner must show that the ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004); Thomas v. Horn, 570 F.3d 105 (3d Cir.2009).

The general rule is that a petitioner must show an error so egregious "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 102-03 (2011). The unreasonable application of federal law element focuses on whether the state court unreasonably applied relevant holdings of the Supreme Court. White v. Woodall, 572 U.S. 415, 419-20 (2014). Petitioner does not argue that here, and if he did the state court correctly identified and applied the relevant Supreme Court holding.

An unreasonable determination of the facts is one where the petitioner proves by clear and convincing evidence, see 28 U.S.C.§ 2254(e)(1), that the conclusion drawn from the evidence by the state court is so improbable that it "blinks reality." *See* Miller-El v. Dretke, 545 U.S. 231, 266 (2005)(prosecution's use of peremptory challenges to strike 10 of 11 black venirepersons violated *Batson*; state court's finding to the contrary proved wrong by clear and convincing evidence); *Cf.* Rice v. Collins, 546 U.S. 333, 341-42 (2006) (state trial acceptance of prosecutor's race-neutral explanation for single challenged strike of an African-American juror not proved to be an unreasonable determination of facts). This is not an impossible bar, but it is a high bar to clear: as the Court's review of *Batson* claims in *Miller-el* and *Rice* shows, as long as reasonable minds might disagree about the correctness of a factual determination, a federal habeas court must defer to the state court's determination.

Petitioner asserts without further evidence that the lack of success of the *Batson* challenge proves that "[t]he trial court did not protect petitioner's due process rights." Petition at Paragraph 12. This fails to carry petitioner's burden to show that he is entitled to habeas relief.

Petitioner's second claim is the parallel or duplicate argument that the *Batson* violation was prosecutorial misconduct and his due process rights were violated when the trial court did not find prosecutorial misconduct based on the Commonwealth's striking of the same member of the venire. *Id.*

The Pennsylvania Superior Court found this argument to have been waived, observing:

> To preserve an objection, a party must raise the objection and state a specific ground when it is raised. *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003); Pa.R.E. 103(a)(1). The failure to state a specific legal theory in support of an objection results in waiver of the theory and the overall objection itself. *Commonwealth v. Lopez*, 57 A.3d 74, 81-82 (Pa. Super. 2012); Pa.R.E. 103(a)(1). Also, having articulated one or more bases for an objection, a party waives all non-stated bases. *Lopez*, 57 A.3d at 82. An appellant cannot raise on appeal a legal theory in support of an objection or other issue if the theory is different from the theory advanced at trial. *Duffy*, 832 A.2d at 1136. It is an appellant's duty to demonstrate where and how an issue and its supporting theory were preserved. *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008); Pa.R.A.P. 2117(c), 2119(e).
>
> During jury selection, Appellant objected to the Commonwealth's striking of Juror No. 139. N.T., 4/4/19, at 79-80. Appellant "raised this objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986)." Appellant's Brief at 10. However, Appellant did not make a prosecutorial misconduct objection, N.T., 4/4/19, at 79-81, nor has Appellant indicated that he "preserved such a theory of relief." *See* Appellant's Brief at 13-14; *Rush*, 959 A.2d at 949. Thus, we agree Appellant's second issue is waived.

2021 WL 5755410 at 4-5

Claims based on federal law that the state courts do not deny on the merits due to a failure to present them in the manner required by state procedure ordinarily are considered procedurally defaulted. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977). They cannot be reviewed in a federal habeas proceeding unless the petitioner shows either a miscarriage of justice (that is, that he is innocent) or cause for his default, plus prejudice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 749-50 (1991). Showing "cause" for a procedural default typically requires proof that the default occurred because counsel was ineffective at a stage of the proceeding at which the petitioner was entitled to the effective assistance of counsel (and ineffectiveness is an independent claim that must itself be exhausted in the state court,

7

Edwards v. Carpenter, 529 U.S. 446, 452 (2000) unless petitioner can show his actual innocence), or the factual basis for a claim was not available, or state officials made compliance with the procedural rule impracticable. *See* Murray v. Carrier, 477 U.S. 478, 488 (1986). Petitioner makes no attempt to prove cause and prejudice. And there is no question that the waiver rule observed by the state court (identical to the federal one) was "firmly established and regularly followed" at the time it was applied, and therefore an adequate and independent basis for the state court's decision. *See* Ford v. Georgia, 498 U.S. 411, 424 (1991); *Cf.* Nolan v. Wynder, 363 Fed.Appx. 868, 871 (3d Cir.2010)(waiver for noncompliance with Pa.R.App.P. 2116(a)'s prescribed page limitation was not an adequate bar to habeas review where at the time of violation Pennsylvania courts "routinely addressed the substantive merits of claims despite a party's failure to comply with the mandatory page limitation.")

As a further reason for rejecting this claim, a violation by the prosecution of the rule in Batson v. Kentucky can be considered a species of prosecutorial misconduct, but rejection of a *Batson* claim implies rejection of any prosecutorial misconduct claim. If it is not impossible to imagine facts from which a prosecutor who was found not to have violated *Batson* could be found on those same facts to have nevertheless committed prosecutorial misconduct, petitioner does not present that rare scenario.

Petitioner's third and fourth claims are that the trial court made erroneous evidentiary rulings. Petition at Paragraph 12. Petitioner presented two related claims to the state courts: that the trial court erred in admitting recorded telephone calls from the petitioner (who was in jail) to his sister during which petitioner discussed witness intimidation by a person nicknamed "Freak," and that the trial court erred in permitting a prosecution witness to identify "Freak" as "a known narcotics dealer." However, petitioner did not present the two claimed errors as federal claims of any kind. *See* Appellant's Brief at 14-22, ECF no. 15-16 at 18-25. Petitioner did not then, and does not now, identify a federal basis for relief on these issues.

A state court's misapplication of its own law does not generally raise a constitutional claim. Inquiry into the correctness of state law evidentiary rulings is not part of a federal court's habeas review of a state conviction because "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991)(citation omitted). Of course it is the case that evidentiary rulings can implicate federal constitutional concerns (examples are allowing redacted statements or hearsay statements that implicate the right to confrontation of witnesses), but garden variety rulings such as the two cited by petitioner do not. The federal courts have no general supervisory authority over state court trials and may intervene only to correct wrongs of constitutional dimension. Geschwendt v. Ryan, 967 F.2d 877, 888–89 (3d Cir.)(*en banc*), *cert. denied*, 506 U.S. 977 (1992).

The types of rulings that present independent federal claims are very narrowly defined. As an example, in Dowling v. United States, 493 U.S. 342, 352-53 (1990), the petitioner was convicted of bank robbery after the jury heard testimony about an allegedly similar home invasion for which Dowling had been tried and acquitted. The Supreme Court rejected the argument that appellate review of Rule 404(b) rulings needed to be supplemented by a constitutional analysis because the Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Id., 493 U.S. at 352-53.

If the two errors alleged by petitioner were the rare ones that could be considered fundamental, petitioner presented these claims to the Pennsylvania Superior Court as state law claims only, and that would not have exhausted any federal claim. An error of state law cannot be repackaged as a federal error in a habeas petition by citing federal law. *See* Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir.1997). *See also* Wilkerson v. Superintendent Fayette State Corr. Inst., 871 F.3d 221, 227-28 (3d Cir.2017) (a petitioner must have presented the substance of a federal claim to the state courts in a manner that put the state courts on notice that a federal claim was being asserted).

A certificate of appealability should not be issued unless the petitioner has made a "substantial showing" of the denial of a constitutional right. 28 U.S.C.§ 2253(c) (2). No showing of a constitutional claim has been made, so no certificate of appealability is issued. The Clerk is directed to mark this case closed. This is a final appealable order.

DATE: July 12, 2023

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Daniel Culmer NX-6927
S.C.I. Houtzdale
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698-1000